[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 3601
This is a summary process action based on non-payment of rent for June 1998. Notice to Quit is dated June 11, 1998, and is signed "Landlord: Bristol Baptist Church" by its attorneys. In the summons and complaint dated June 30, 1998, the plaintiff is named "Bristol Baptist Church"(hereinafter sometimes referred to as "Church"). On September 17, 1998, the defendants filed an answer and the following special defenses which Church denies: 1) the complaint falls to state a cause of action, 2) there is a misjoinder of parties and 3) no rent is due because the subject property violates fire, health and safety codes.
At the trial in this matter during direct examination of Church's Chairman of the Board of Trustees, it was elicited that the plaintiff is a Connecticut corporation, incorporated under the name "The Bristol Baptist Church." The plaintiff moved to "Substitute/Correct Party Plaintiff" by amending the name in the summons and complaint from "Bristol Baptist Church" to "The Bristol Baptist Church." The amendment was allowed, over defendants' objection, to conform the pleadings to the proof.[1] Defendants then moved to dismiss the action on the ground that Notice to Quit served on them was defective because it was signed in the name of "Bristol Baptist Church" — a nonentity — rather than in the name of "The Bristol Baptist Church." After argument, the motion to dismiss was denied, and the trial proceeded on the merits.[2]
I find the allegations of the complaint have been either admitted or proven.
The defendants have the burden to prove their special defenses. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234,237, 520 A.2d 1008 (1987).
By way of defense, defendants allege "there is no rent due because the property falls to comply with the fire, health, and safety codes." General Statutes § 47a-4a[3] prohibits a landlord from recovering rent for any period during which he has failed to comply with § 47a-7[4]. To succeed in such a defense, the defendants must prove that the premises were in such a state in the month of nonpayment so as to render them unfit and uninhabitable. Alteri v. Layton, 35 Conn. Sup. 261, 267. (1979). The defects must materially and substantially affect the tenants CT Page 3602 use of the premises. It is not enough for the tenant to show that the premises are not in full code compliance. Gayle v. Young, No. SPBR 9409-27973 (Feb. 6, 1995) 1995 Ct. Sup. 1198-X (Tierney, J.).
 To be successful a tenant must demonstrate actual and serious deprivation of the use contemplated by the parties to the lease. The considerations to be reviewed in a finding of unfit and uninhabitability are 1) the situation of the parties, 2) the character of the premises, 3) the use to which the tenant actually or intends to put them and 4) the nature and extent by which the tenants use of the premises is interfered with by the injury claimed. The code violations must be substantial and a serious deprivation to health and safety for those to be grounds for a rent abatement or sanctions of any sort. Whether the premises are untenantable is a question of fact for the trier, to be decided in each case after a careful consideration of the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the nature and extent by which the tenants use of the premises is interfered with by the injury claimed. (Citations omitted.)
Gayle v. Young supra.
LaFrancois has resided at the single family premises since March of 1994 with codefendant Rousseau and two children. Initially, the premises were occupied under a year-long lease. In June of 1998, the defendants were occupying under a month to month lease.
LaFrancois, a housebuilder for 13 years testified about conditions of disrepair on the premises, as follows: floors are lifting, decks are unstable, doors are falling apart or will not open, many electrical plugs are faulty, and the stairs are not the right height. The defendants did not complain of these problems to the fire marshall or to the Bristol housing code or zoning enforcement offices.
Defendants' expert, a structural and mechanical engineer, inspected the premises on October 7, 1998, and found a problem with "hot spots" in the electrical wiring which he considered unsafe. He found the rear porch to be improperly connected to the house and considered that condition also to be unsafe. He felt that the electrical wires and porch required immediate major repairs to ensure safety. He is not an electrical engineer and CT Page 3603 could not state that those conditions violated any code nor did he report them to the Bristol housing or zoning authorities or to the fire marshall. He testified that he is required to report conditions to the authorities only if he feels people are acting irresponsibly.
Defendants have not sustained their burden to prove code violations causing substantial interference with their use of the premises. The electrical problems do raise safety concerns; however, even if I were to give full weight to the experts findings when he inspected the premises in October 1998, (and I do not do so) the defendants did not meet their burden to prove code violations which rendered the premises uninhabitable or unsafe in June 1998, the month of nonpayment.
Judgment may enter for the plaintiff against the defendants for nonpayment of rent.
Tanzer, J.